FERRY AND AKIN *vs.* LAIBLE and others.

1. Where a testator directs his executors to continue his business after his death, and they contract debts in its prosecution, so much and no more of the testator's assets as he has directed to be employed in the continuance of the business after his death, with the accumulations thereon, will stand charged in equity with all debts properly contracted in the prosecution of the business, and a creditor of such fund may look to it in the first instance for the payment of his debt, and before exhausting his remedy against the executors personally.

2. No general rule defining what causes of action may be properly joined, and what cannot, can be laid down. The question is always one of convenience in conducting a suit, and not of principle, and is addressed to the sound discretion of the court.

3. Where it appears that the causes of action or claims are so dissimilar or distinct in their nature that they cannot be heard and determined

together, but must be heard piecemeal, first one and then the other, a clear case of misjoinder is presented.

4. But where a complainant has two good causes of action, each furnishing the foundation of a separate suit, one the natural outgrowth of the other, or growing out of the same subject matter, where all the defendants have some interest in every question raised on the record, and the suit has a single object, they may be properly joined, and the objection of multifariousness or misjoinder will not be sustained.

On demurrers to bill.

*Mr. A. Q. Keasbey,* for complainants.

*Mr. Wm. H. Morrow,* for Johanna Laible.

*Mr. Thomas N. McCarter,* for Maria A. Laible.

THE VICE-CHANCELLOR.

The bill, as originally framed, presented an ordinary foreclosure case. It prayed a decree for the sale of certain mortgaged premises in satisfaction of a mortgage made by Christopher Wiedenmayer and Johanna Laible, to the complainants, for the sum of $65,000. The mortgaged premises were the property of John Laible the first, at the time of his death in August, 1862, and were conveyed by his executors to Wiedenmayer just before the execution of the mortgage in suit. Answers were filed by certain of his children, denying the power of the executors to convey, and also alleging that the conveyance to Wiedenmayer was not made to carry out an actual sale, but was a mere artifice to enable him to execute the mortgage to the complainants. The complainants thereupon amended their bill, substantially alleging that the testator, at the time of his death, was engaged in the brewery business; that his executors, pursuant to the directions of his will, continued his business after his death; that the debt secured by their mortgage was contracted by the executors in the purchase of necessary brewers' materials used in the business; that the business, under the management of the executors, was

prosperous, and out of the means furnished by the complainants for carrying it on, the executors, without the knowledge of the complainants, paid the testator's debts,. and erected on the brewery premises a large brick dwelling-house, at a cost of nearly $30,000 ; also, a large new brewery, and a cooling house, and made large additions to the cellars, machinery and fixtures ; that in consequence of the large outlays for these purposes, the executors were unable to pay the complainants,. and although never distinctly so informed, they suppose the conveyance to Wiedenmayer was made with a view of securing their claim, and preventing a sale of the brewery premises under judicial proceedings. They, therefore, insist that whether their mortgage is a valid lien on the mortgaged premises or not, the testator, by directing the continuance of his business after his death, embarked his whole estate in trade, and charged it in equity with all debts properly incurred in its prosecution.

Two demurrers have been filed, one by Maria A. Laible, the widow and sole legatee of the testator's deceased son John,. insisting that the amendments contain no equity; and the other by the testator's widow, alleging that the bill, as amended, is multifarious.

In support of the objection of want of equity, it is said that where a testator directs his executors to continue his business after his death, and they contract debts in its prosecution, the primary remedy of creditors is against the executors personally, and they have no remedy against the assets until the personal remedy is exhausted, unless insolvency is alleged. This view seems to have the support of the judgment of Vice-Chancellor Bacon, in *Owen* v. *Delamere*, 15 *Eq. Cas.* 139, and he cites the judgment of Lord Eldon in *Ex parte Garland*, 10 *Vesey* 120, as his authority. Lord Eldon's opinion, as I read it, gives no support to this view, but so far as he lays down any rule on the subject of the order of liability, declares the fund or property embarked in trade primarily answerable. He says: "Creditors whose debts have been contracted after the death of the testator, have the whole fund that is embarked in

the business; and in addition, they have the personal responsibility of the individual with whom they deal. They have something very like a lien upon the estate embarked in the trade." It is manifestly just that so much of his estate as the testator has embarked in the business, shall be answerable, in some form, to the creditors of the business. I think this rule may be fairly deduced from the cases, that so much and no more of the testator's assets as he has directed to be employed in the continuance of his business after his death, with the accumulations thereon, shall stand charged in equity with all debts properly contracted in the prosecution of the business. *Ex parte Garland, supra; Ex parte Richardson,* 3 *Madd.* 138; *Thompson* v. *Andrews,* 1 *M. & K.* 116; *Outbush* v. *Outbush,* 1 *Beav.* 185; *McNeillie* v. *Acton,* 4 *DeG., M. & G.* 744. There can be no doubt that on payment by an executor, out of his own funds, of a judgment recovered against him personally, for a debt properly incurred by him in the business, he would be entitled to re-imbursement out of the trust property. It stands pledged, unquestionably, for the ultimate discharge of all debts contracted in its employment, according to the will of the testator. Vice-Chancellor Bacon concedes that by directing a continuance of the trade, the testator has created a trust estate, which the court will keep separate, and apply exclusively to the purposes of the trust. *Owen* v. *Delamere, supra.* Why, then, should creditors, who must in any event be paid out of the trust property, whether it be regarded as primarily or secondarily liable, be put to this circuity of action, with its delays and useless expense? No reason of policy or convenience was shown for limiting creditors, in the first instance, to a personal remedy against the executors, and in the absence of a binding authority constraining me to adopt that view, I think the demurrer alleging want of equity should be overruled.

The position of an executor continuing the testator's business pursuant to his will, is a hard one at best. If the business is prosperous, he can derive no benefit from it; if it proves disastrous, he is personally liable for all loss beyond the value

of the assets embarked in the venture. 2 *Williams on 'Ex'rs* 1526, *marg'l.* His position is one of pure hazard, which he assumes for the benefit of others, without the slightest possibility of advantage to himself. Under these circumstances, the court should be slow to listen to an objection made by the beneficiaries of the testator, to the remedy adopted by a creditor, resting solely on the ground that it is not the most oppressive he could have employed.

The other demurrer imputes two faults to the bill as amended: First, that it seeks to prosecute, in the same action, two distinct causes of action; and second, that it brings before the court, as defendants, certain persons who have no interest whatever in the controversy, so far as it relates to the question whether the complainants can or cannot charge the general estate of the testator with their debt.

No general rule defining what causes of action may be properly joined and what cannot, can be laid down. The question is always one of convenience in conducting a suit, and not of principle, and is addressed to the sound discretion of the court. *Emans* v. *Emans,* 1 *McCarter* 118; *Campbell* v. *Mackay,* 1 *M. & C.* 618; 1 *Daniell's Ch. Pr.* 334, *note* 2; *Story's Eq. Pl.,* § 284. If it appears that the causes of action or claims are so dissimilar or distinct in their nature that they cannot be heard and determined together, but must be heard piecemeal—first one and then the other—a clear case of fatal misjoinder is presented; but where a complainant has two good causes of action, each furnishing the foundation of a separate suit, one the natural outgrowth of the other, or growing out of the same subject matter, where all the defendants have some interest in every question raised on the record, and the suit has a single object, they may be properly joined, and the objection of multifariousness or misjoinder will not be sustained. *Story's Eq. Pl.,* § 284; *Durling* v. *Hammar,* 5 *C. E. Green* 227; *Campbell* v. *Mackay, supra.*

In *Harrison* v. *Stewart,* 3 *C. E. Green* 451, on a bill against husband and wife to foreclose a mortgage, made during coverture by the wife alone, and therefore void, a

decree was made for the sale of the land described in the mortgage, on the ground that, though the mortgage was void as a deed, effect must be given to it as a valid charge of her debt on her separate estate.    The bill was, doubtless, so framed, in its premises and prayer, as to enable the court to give relief on either of the two distinct causes of action contained in it.

Separate causes of action, growing out of the same transaction, against the same defendants, were joined by order of the court in the same bill, in *Wilson* v. *Brown*, 2 *Beas.* 277.

And in *Armstrong* v. *Ross*, 5 *C. E. Green* 121, on a bill to foreclose a mortgage given for the purchase money of land conveyed to a married woman, but void as a deed, because not acknowledged so as to pass her estate, the complainant was permitted, at the hearing, to add to his cause of action on his mortgage, his right to a vendor's lien, the defect of the bill being characterized by the chancellor as merely formal.

These cases sufficiently illustrate, I think, what causes of action may be properly united in the same suit.    They cover precisely the case under consideration.    It must be admitted the demurrer ought not to be sustained, if, on final hearing, the court would permit the cause of action now objected to, to be added.    Although two separate causes of action are set forth in the bill, its purpose is single, viz., the enforcement of a debt, either as a mortgage debt or as a charge upon. the assets embarked in the business.    Each of the defendants has some interest in all the questions raised on the record, whether they flow from the one cause of action or the other.    They are all interested in the brewery premises, and are, therefore, necessary parties to a suit founded on either cause of action, for these premises constitute a part of the property answerable for the debt, whether it is enforced as a mortgage debt or as a charge in equity.    Some of the defendants have no interest in so much of the trade property as consists of personalty, but their interest in the brewery premises, and in those portions of the testator's other lands which, it is alleged, have been greatly increased in value by the improvements made thereon

by the executors, out of the earnings of the brewery business, render them necessary parties to a suit founded on either or both causes of action. All the defendants are clearly indispensable parties to a suit founded on either cause of action. Neither of them can say, to either claim made by the complainants, what Lord Cottenham says in Campbell *v.* Mackay, a defendant must be able to say, to uphold a demurrer for multifariousness, that " he is brought as a defendant upon a record, with a large portion of which, and of the case made by which, he has no connection whatever."

· · Neither objection is well taken. Both demurrers must be overruled, with costs.